**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 30 2012, 9:34 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOSHUA D. HERSHBERGER**
Hershberger Law Firm
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Central Administration
Indianapolis, Indiana

**CHRISTA L. WEST**
Indiana Department of Child Services
Scott County Office
Scottsburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF J.S., minor child, and | ) ) ) ) |
| T.S. (Father), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 72A01-1107-JT-329 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, SCOTT COUNTY OFFICE, | ) ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE SCOTT CIRCUIT COURT
The Honorable Roger L. Duvall, Judge
Cause No. 72C01-1005-JT-9

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

T.S. ("Father") appeals an order terminating his parental rights to J.S., upon the petition of the Scott County Department of Child Services ("DCS").[1] We affirm.

**Issue**

Father presents a single, restated, issue for appeal: Whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination of parental rights.

**Facts and Procedural History**

On March 12, 2009, J.S. was born to T.H. ("Mother") in Scott Memorial Hospital. DCS became involved when it was determined that J.S. had been born addicted to opiates. J.S. was taken to Kosair Children's Hospital in Louisville, Kentucky, where she was given morphine and drug-withdrawal treatment for several weeks. DCS, Father, and Mother agreed to a safety plan to be implemented upon J.S.'s discharge. The terms of the safety plan provided that Mother would not be left alone with J.S. until DCS was able to obtain clean drug screens from her. Father, who lived with Mother, and his mother ("Grandmother"), who lived next door, were to supervise Mother's interaction with J.S. J.S. was discharged

---

[1] J.S.'s mother is not an active party to this appeal.

from the hospital into the care of her parents.

On April 14, 2009, DCS caseworkers visited the home in response to a report that Father (who had prescription medications to treat schizophrenia, back pain, and anxiety attacks) had been taking his medications in excess. On that date, Mother tested positive for drugs, and Father was found to be six days short in his prescription supplies. Father also admitted to marijuana use. J.S. was removed and placed with Grandmother.

On September 18, 2009, J.S. was placed back in Mother's home on a trial basis. Father, who was no longer romantically involved with Mother, declined visitation with J.S. However, he participated in a mental health evaluation. On February 8, 2010, J.S. was removed from Mother's home and placed in foster care, after Mother tested positive for methamphetamine.

On May 19, 2010, DCS petitioned to terminate Mother's and Father's parental rights. The Scott Circuit Court conducted an evidentiary hearing on February 24, March 31, April 7, and April 22, 2011.[2] On July 7, 2011, the court issued an order terminating Mother's and Father's parental rights. Father now appeals.

**Discussion and Decision**

A. Standard of Review

Our standard of review is highly deferential in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly

---

[2] Mother did not appear in court other than on February 24, 2011.

erroneous.  In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997).  When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses.  Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom.  Id.

B. Requirements for Involuntary Termination of Parental Rights

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities.  Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005).  The purpose of terminating parental rights is not to punish the parents, but to protect their children.  In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code Section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) That one (1) of the following is true:

(i)   The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

4

(B) That one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described in Section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. The evidence need not rule out all possibility of change; rather, it need establish only "that there is a reasonable probability the parent's behavior will not change." In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).

## C. Analysis

Father asserts that there is insufficient evidence to support the termination decision. He does not challenge the court's determinations pursuant to Indiana Code Section 31-35-2-4(b)(2)(A) (removal from parent), or (D) (satisfactory plan). However, he challenges the determinations relating to Indiana Code Section 31-35-2-4(b)(2)(B) (conditions will not be

5

remedied or relationship poses a threat to child's well-being) and (C) (best interests of the child).

Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed to find that only one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. See L.S., 717 N.E.2d at 209. Because we find it to be dispositive under the facts of this case, we only consider whether DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. See Ind. Code § 31-35-2-4(b)(2)(B)(i). The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." In re A.I., 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), trans. denied.

Initially, J.S. was removed because of her parents' use of drugs and violation of the safety plan. Services were offered by DCS, but Father's participation was very limited. He participated in a psychological evaluation at Life Spring, but then "never came back." (Tr. 178.) Father was diagnosed as having schizoaffective disorder, with bipolar features. He also reported historical diagnoses of depression, schizophrenia, and anxiety attacks, for which he was receiving disability payments.

During the CHINS proceedings, he twice attempted to commit suicide. Father claimed to be receiving therapy at a location other than Life Spring, but was unable or unwilling to provide caseworkers with documentation to support the claim. Father reported

6

that he was taking prescribed medications for his mental health and back pain, but also admitted that he was obtaining drugs "from the street." (Tr. 180.) Father consistently had drug screens that were positive for marijuana or drugs for which he had no prescription.

Father also declined anger management sessions, believing that he didn't "have a problem." (Tr. 326.) He worked briefly with family preservation worker Elizabeth Caudill ("Caudill"). However, according to Caudill, Father interacted sleepily and sporadically with J.S. and seemed more focused upon his needs, specifically a need to obtain pain medication.

Apart from the time that J.S. was in Grandmother's care, Father exercised very little visitation. When J.S. was in Mother's custody, Mother was ordered to bring J.S. to a visitation center but Father "didn't want to put up with [Mother]" and refused to participate in the arrangement. (Tr. 336.) He advised that he was "not part of the baby's life" and expressed doubts that J.S. was his biological child. (Tr. 180.) When J.S. was placed in foster care, Father was again offered visitation. Twice weekly visits were anticipated. Within a three-month period, Father attended three visits.

DCS presented clear and convincing evidence from which the trial court could conclude that there is a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied.

Father also challenges the court's determination relating to the best interests of J.S. In determining what is in the best interests of the child, the court is required to look beyond the factors identified by DCS and consider the totality of the evidence. In re A.B., 887 N.E.2d 158, 167 (Ind. Ct. App. 2008). Here, the evidence most favorable to the judgment indicates

7

that Father has historically struggled with severe symptoms of mental illness. At a minimum, he needs consistent therapy and medications. However, stabilizing Father's symptoms has been made particularly difficult because of his willingness to ingest street drugs and his failure to follow through with recommended counseling.

J.S., who has overcome much of her initial developmental delay, nevertheless continues to need intensive services. Her foster mother and her Court-appointed Special Advocate ("CASA") testified that J.S. has been diagnosed with Hepatitis C, and has vision problems that have required surgery and will most likely require surgery in the future. At the time of the termination hearing, she was being treated by four medical providers, some in Indiana, and some in Kentucky. Transportation has historically posed a problem to Father, who does not drive due to anxiety issues. The CASA opined that termination of parental rights was in J.S.'s best interests.

Father does not dispute that J.S. has special needs; nor does he deny that he has historically been unable to meet her needs. He simply maintains that he has been a loving parent and should be afforded more time to demonstrate his parental abilities. In essence, Father asks that we reweigh the evidence and accord greater weight to his testimony that he has sought appropriate mental health care and has discontinued illicit drug use. We will not do so. See In re A.A.C., 682 N.E.2d at 544. DCS presented clear and convincing evidence from which the trial court could conclude that the termination of parental rights is in J.S.'s best interests.

**Conclusion**

DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

Affirmed.

BAKER, J., and DARDEN, J., concur.