**In the Matter of the Involuntary Termination of the Parent–Child Relationship of A.B., Minor Child and Her Mother, D.B., and Her Father, B.B., Appellants–Defendants,**

v.

**Marion County Department of Child Services, Appellee–Petitioner**

and

**Child Advocates, Inc., Co–Appellee (Guardian ad Litem).**

No. 49A02–0908–JV–710.

Court of Appeals of Indiana.

April 1, 2010.

Steven J. Halbert, Victoria L. Bailey, Indianapolis, IN, Attorneys for Appellants.

Kimberly Spindler, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

D.B. ("Mother") and B.B. ("Father") appeal the termination of their parental rights to their daughter, A.B. We affirm.

### Issues

The restated issues before us are:

I. whether there is sufficient evidence to support the termination of Mother's parental rights; and

II. whether there is sufficient evidence to support the termination of Father's parental rights.

### Facts

Mother gave birth to A.B. on February 24, 2008. Father, who was not married to Mother, was A.B.'s alleged father. On February 27, 2008, the Marion County Department of Child Services ("DCS") filed a petition alleging A.B. was a child in need of services ("CHINS") after A.B. tested positive for cocaine. Mother originally denied having used cocaine and claimed that she had been exposed to cocaine secondhand through Father's use of it. Later, however, Mother admitted that she had used crack cocaine five days before A.B.'s birth "because she was stressed and because she couldn't find a job, [and] didn't have money to buy supplies for the baby." Tr. p. 25.

On the date the CHINS petition was filed, Mother admitted to it. The trial court removed A.B. from Mother's custody and entered a dispositional decree as to her. Father did not appear for this CHINS hearing, although it was soon learned that he was living with Mother and was aware of the CHINS proceeding but declined to accept service of process for it. Father did not want to appear in court because he had outstanding arrest warrants.

Mother's dispositional decree required her to, among other things, obtain a stable and legal source of income, obtain and maintain suitable housing, undergo and successfully complete homebased counseling, undergo and successfully complete a drug and alcohol abuse assessment, and submit to random drug testing. At first, Mother was cooperative with homebased counseling and submitting to random drug testing. After about two months, however, Mother stopped participating in the homebased counseling and drug testing. The DCS thus terminated those services as unsuccessful. Additionally, Mother never made an appointment to undergo a drug

and alcohol abuse assessment. In April 2008, a counselor confronted Mother about the results of a drug test, and Mother stated that cocaine must have gotten into her system when she had touched some cocaine Father had left in the house.[1]

On June 18, 2008, the trial court held a "default" hearing with respect to Father, after attempts to effect personal service failed and service by publication was accomplished. The trial court entered a dispositional order as to Father on that date, again finding A.B. was a CHINS. The order directed that no services be provided to Father until he appeared in court and demonstrated "a desire and ability to care for the child." Ex. 8.

Father first appeared in court on September 3, 2008, at a permanency hearing. At that time, the trial court appointed a public defender to represent Father. It also stated that it was entering "a denial on his behalf and sets pretrial." Ex. 9. Also, at some point prior to this hearing, Father and Mother had moved to Ohio. DCS's attempts to arrange for Father and Mother to receive services in Ohio were unsuccessful, in part because the Ohio equivalent of DCS would not provide services to them until they had resided there for six months. Mother and Father moved back to Indiana in October 2008; Father moved back to Ohio again in November 2008. Also, Father also failed to appear at the pretrial hearing scheduled for October 15, 2008.

In October 2008, Mother met with her DCS case manager about attempting to recommence services. The case worker re-referred Mother for visitation, random drug screening, and a drug and alcohol abuse assessment. Mother began doing the visitation and random drug screenings but then stopped doing both. She also

again failed to undergo a drug and alcohol abuse assessment. The caseworker did not re-refer Mother to homebased counseling because she did not have a stable residence.

On December 30, 2008, the DCS filed a petition to terminate both Mother and Father's parental rights to A.B. The trial court held a hearing on the petition on April 7, 2009. As of that date, Father had not seen A.B. since she was in the hospital after being born. On April 14, 2009, the trial court entered its judgment terminating Mother and Father's parental rights, accompanied by findings and conclusions. Mother and Father filed a joint motion to correct error, which the trial court denied. They now appeal.

### Analysis

"When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." *Bester v. Lake County Office of Family & Children,* 839 N.E.2d 143, 147 (Ind.2005). "We consider only the evidence and reasonable inferences that are most favorable to the judgment." *Id.* Where, as here, a trial court enters findings and conclusions granting a petition to terminate parental rights, we apply a two-tiered standard of review. *Id.* First, we determine whether the evidence supports the findings. *Id.* Then we determine whether the findings support the judgment. *Id.* We will set aside a judgment only when it is clearly erroneous. *Id.* A judgment is clearly erroneous when the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

A petition to terminate the parent-child relationship must allege:

(A) one (1) of the following exists:

1. The actual results of this drug test were not    admitted into evidence.

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind.Code § 31–35–2–4(b)(2) (2008).[2]

■ The DCS had the burden of proving these allegations by clear and convincing evidence. *See Bester,* 839 N.E.2d at 148. Clear and convincing evidence need not show that the custody by the parent is wholly inadequate for the child's survival. *Id.* Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development would be threatened by the parent's custody. *Id.*

**I. Mother**

■ Mother challenges the trial court's finding that the conditions that led to A.B.'s removal from her care will not be remedied.[3] The sole condition that led to A.B.'s removal was Mother's drug use shortly before A.B. was born, leading to A.B. testing positive for cocaine. Based on a home visit shortly after A.B.'s birth, the DCS found that Mother's home otherwise would have been appropriate for A.B.

■ In determining whether the conditions that led to a child's removal will not be remedied, the trial court must judge a parent's fitness to care for her child at the time of the termination hearing and take into consideration evidence of changed conditions. *In re J.T.,* 742 N.E.2d 509, 512 (Ind.Ct.App.2001), *trans. denied.* However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* When assessing a parent's fitness to care for a child, the trial court should view the parent as of the time of the termination hearing and take into account any evidence of changed conditions. *In re C.C.,* 788 N.E.2d 847, 854 (Ind.Ct.App.2003), *trans. denied.* The trial court can properly consider the services that the State offered to the parent and the parent's response to those services. *Id.* Moreover, a DCS is not required to rule out all possibilities of change, but only needs to establish that there is a reasonable probability the parent's behavior will not change. *Moore v. Jasper County Dep't of Child Servs.,* 894 N.E.2d 218, 226 (Ind.Ct.App.2008).

---

**2.** Effective July 1, 2009, subsection (b)(2)(A)(iii) of this statute was reworded slightly. *See* P.L. 131–2009 § 65. We quote the version of the statute in effect at the time of the proceedings in this case.

**3.** Unlike in many cases, the trial court did not enter an alternate finding that continuation of the parent-child relationship posed a threat to A.B.

Mother contends the DCS failed to establish by clear and convincing evidence that her drug usage had not been remedied. She notes the lack of documentary evidence that she ever failed any drug test. The trial court, however, found that Mother had "failed to address her substance abuse issues...." App. p. 10. We cannot say this finding is clearly erroneous.

■ Mother was twice referred to participate in a drug and alcohol abuse assessment, but she failed to follow through on such an assessment both times. Additionally, although she twice began submitting to random drug screens, in March and October of 2008, she both times quit participating in them shortly thereafter. A parent whose drug use led to a child's removal cannot be permitted to refuse to submit to drug testing, then later claim the DCS has failed to prove that the drug use has continued. Mother cannot and should not prevail with such a circular and cynical argument.

There also is some indirect evidence that Mother did in fact test positive for cocaine usage after A.B. was born, when she attempted to give an implausible explanation for why there was cocaine in her system.[4] This evidence, combined with Mother's failure to participate in any drug and alcohol assessment and counseling, makes it reasonable to reach the conclusion that her drug abuse issue was not remedied. There is sufficient evidence to support the trial court's findings with respect to terminating Mother's parental rights.

## II. Father

■ Father's sole contention is that the DCS failed to prove that A.B. was removed from his care for at least six months under a dispositional decree at the time the petition to terminate his parental rights was filed on December 30, 2008.

He contends that, although the trial court entered a dispositional CHINS order by default as to him on June 18, 2008, it effectively set aside that order on September 3, 2008, when it stated that it was entering "a denial on his behalf and set[ting] pretrial." Ex. 9. The trial court thereafter never entered a different dispositional order as to Father. However, it also never expressly stated that it was setting aside the June 18, 2008 dispositional order.

■ Although neither party mentions it, we believe it is appropriate to refer to Indiana Trial Rule 60, which governs relief from judgments or orders in civil cases. "A CHINS proceeding is a civil action." *In re D.H.,* 859 N.E.2d 737, 741 (Ind.Ct.App.2007). First and foremost, our supreme court has unequivocally held that this rule does not permit a trial court to sua sponte set aside a judgment, unless it is merely to correct a clerical mistake as permitted by subsection (A) of the rule. *See State ex rel. Dale v. Superior Court of Boone County,* 260 Ind. 661, 662–63, 299 N.E.2d 611, 611–12 (1973). Otherwise, a judgment can only be set aside by a party filing a motion under subsection (B) of the rule and after a hearing has been conducted under subsection (D). *See id.* at 662, 299 N.E.2d at 611. Because there is no claim of clerical mistake in the June 18, 2008 dispositional order and Father never filed a motion to set aside that order, the trial court lacked authority to set it aside sua sponte. Even if the trial court purported to set aside that order, which is debatable given that it never expressly said it was doing so, it could not have done so.

■ Moreover, we perceive no basis upon which the dispositional order could have been set aside under Rule 60(B).

---

4. Clearly, it would have been preferable if the DCS had been able to actually introduce into evidence the results of the drug test that led to this explanation.

Father was fully aware of the CHINS proceeding from the outset, and voluntarily chose not to participate in it and to ignore summonses. The trial court finally defaulted Father only after achieving service by publication. Father could not have successfully set aside the dispositional order under Rule 60(B)(1) for "mistake, surprise, or excusable neglect...." Nor could he have done so under Rule 60(B)(4), which allows a default judgment to be set aside where service was accomplished by publication and the party "was without actual knowledge of the action and judgment, order or proceedings...." Finally, there is no claim of a lack of personal jurisdiction due to the failure to achieve personal service on Father; thus, he cannot claim "the judgment is void" per Rule 60(B)(6).

In sum, we cannot permit Father to avoid the impact of the June 18, 2008, default dispositional order, which resulted from Father's willful neglect of the CHINS proceeding. The trial court could have chosen its words more carefully when it issued the September 3, 2008 order. Nevertheless, it never expressly set aside the dispositional order, it could not have done so sua sponte, and there is no basis upon which Father could have set aside the order even if he had moved to do so. There is sufficient evidence to support the trial court's finding that A.B. was removed from Father's care for at least six months under a CHINS dispositional order.

### Conclusion

There is sufficient evidence to support the termination of Mother and Father's parental rights to A.B. We affirm.

Affirmed.

MATHIAS, J., and BROWN, J., concur.