**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARIANNE WOOLBERT**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**DOROTHY FERGUSON**
DCS Madison County
Anderson, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED

Nov 21 2012, 10:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE TERMINATION OF THE ) <br>
PARENT-CHILD RELATIONSHIP OF ) <br>
K.S. and K.C. (Minor Children) and ) <br>
                ) <br>
Y.C. (Mother), ) <br>
                ) <br>
     Appellant-Respondent, ) <br>
                ) <br>
         vs. )    No. 48A04-1202-JT-52 <br>
                ) <br>
THE INDIANA DEPARTMENT OF CHILD ) <br>
SERVICES, ) <br>
                ) <br>
     Appellee-Petitioner. )

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable G. George Pancol, Judge
Cause Nos. 48D02-1106-JT-24 and 48D02-1106-JT-25

**November 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Y.C. ("Mother") appeals the trial court's involuntary termination of her parental rights to her children, K.S. and K.C. We affirm.

**Facts and Procedural History**

Mother does not challenge the correctness of the factual findings in the trial court's termination order, which reads in pertinent part as follows:

**<u>FINDINGS OF FACT</u>**

1. [K.S.] was born on January 17, 2003 ….

2. [K.C.] was born on September 24, 1998 ….

3. [Mother] and [Father] are the biological parents of both children.

4. On April 27, 2006, the children were detained as there was no caregiver for the children as [Mother] was incarcerated, and grandmother was also arrested. At the time of detention, the father was unknown.

5. On April 27, 2006, a detention hearing was held whereby the court found probable cause to detain, and the children were placed in foster care.

6. On June 12, 2006, this Court authorized the filing of a Child In Need of Services Petition.

7. On or about June 7, 2006, the Indiana Department of Child Services ["DCS"] filed a Petition Alleging Children in Need of Services alleging that the children were without a caregiver, and that [Mother] has an extensive history with drug abuse, chemical dependence, and was incarcerated for possession of drugs.

8. At the time of the initial filing of the "CHINS Petition," father was unknown.

9. On June 22, 2006, this matter came before the court for initial hearing wherein [Mother] admitted the allegations generally and the matter was set for dispositional hearing on July 13, 2006.

10. On July 6, 2006, an Amended Petition Alleging Child In Need of Services was filed. The Amended Petition added [Father].

11. On or about July 27, 2006, [Father] appeared for initial hearing, and entered an admission in general terms, and the matter was set for dispositional hearing on August 17, 2006.

12. At the time of initial hearing, both parents appeared incarcerated.

13. On August 17, 2006, both parties appear[ed] for dispositional hearing wherein the court made the following orders in relevant part:

   a. That [Mother] successfully complete the inpatient substance abuse treatment program at the Richmond State Hospital;

   b. That [K.C.] and [K.S.] continue visitation with Deidre Shelton and Markell Shell.

   c. That [K.C.] participate in the Big Brothers/Big Sisters program.

   d. That [K.C.] continue her participation with the programs at the Gateway Association.

   e. That [K.S.] participate in Head Start, should she be accepted.

   f. That [K.C.] and [K.S.] maintain contact with [Mother] while she is at Richmond State Hospital, through either visitation or written correspondence.

14. [Mother] has a substantial criminal history.

15. In November 2006, [Mother] left Richmond Treatment Center unauthorized and a warrant was issued for her arrest and she tested positive for cocaine.

16. On January 30, 2007, DCS filed a 3-month report with the court that indicated that [Mother] was in jail again as a result of violating the terms of work release.

17. On April 19, 2007, this Court entered a Periodic Review Order which ordered that [Father] actively participate in any classes available in the prison system for drug and alcohol treatment and parenting.

18. In 2008, DCS filed a Petition for Involuntary Termination of the Parent-Child Relationship, under cause numbers 48D02-0801-JT-33 and 48D02-0801-JT-34.

19. At that fact-finding hearing both parties appeared incarcerated.

20. On October 8, 2008, the petition for termination was denied as this court wanted to provide the parents with additional opportunity for reunification.

21. In 2009, [Father] was released from incarceration.

22. He failed to maintain contact with the family case manager.

23. He failed to attend any court hearings until he was reincarcerated and was transported to court via sheriff.

24. At the time of this fact-finding hearing, [Father] is being held by Marion County on new charges of robbery. His incarceration status or release is unknown at the time of this fact-finding hearing.

25. Father has never maintained and/or established a relationship with his children.

26. [Mother] was released from incarceration in late 2008.

27. After her release, [Mother] began participating in court ordered services, such as home-based counseling, and visitation.

28. At some point, DCS had moved to unsupervised visits with mother and children.

29. However, during one of the unsupervised visits mother was arrested for driving while intoxicated, and driving on a suspended license. The older child was in the car at the time of mother's arrest. The younger child was found at home alone.

4

30.     [Mother] was rearrested and reincarcerated.

31.     [On June 29, 2011, DCS again filed petitions for the involuntary termination of Mother's and Father's parental rights to K.C. and K.S.] At the time of this fact-finding hearing [September 27, 2011] mother appears incarcerated with an anticipated release date of April 3, 2012.

32.     [Mother] has four children, all of which have been involved with DCS.

33.     [Mother's] oldest child currently resides with a relative under a guardianship and that child is involved with juvenile probation.

34.     Another child of mother has an open case with DCS in which mother anticipates voluntarily terminating her parental rights too.

35.     [Mother] and [Father] have been unable to regain placement of [K.C. or K.S.], and the children have been in placement in excess of five (5) years.

Appellant's App. at 47-50.

On January 3, 2012, the trial court issued an order involuntarily terminating Mother's and Father's parental rights to K.C. and K.S. The order contains the additional findings of fact and conclusions of law:

36.     Both the Family Case Manager and Court Appointed Special Advocate believe that parental rights should be terminated as it is in the children's best interest.

37.     DCS has a satisfactory plan for the children which [is] adoption.

## CONCLUSIONS OF LAW

Based on the foregoing and pursuant to Indiana Code § 31-35-2-4(2), the Court determines that the children, [K.C. and K.S.], have been removed from the care and custody of their parents, [Mother and Father] for more than six (6) months under a dispositional decree. The court further finds that there is [a reasonable] probability that the conditions that resulted in the children's removal from their parents will not be remedied as both parents appear incarcerated at the time of this fact-finding hearing. DCS became involved

with this family because of a lack of caregiver, and five years later, neither parent is in a position to provide care for these children. [Father] was released from incarceration in 2009 and failed to maintain contact with the family case manager or his children. [Father] has failed to create and maintain a meaningful relationship with his children. [Mother] has a substantial criminal history which consists of her violating probation orders, work release and reoffending. Both parents were provided an opportunity by this court in 2008, when the previous termination was denied to work towards reunification, but parents failed to take advantage of that opportunity. As such, this Court finds that the continuation of the parent-child relationship between [Mother, Father] and the children, [K.C. and K.S.], poses a threat to the well-being of the children as [Mother and Father] have failed to place themselves in positions to provide care for their children. DCS has never been in a position to recommend that the children be placed in either [parent's] care. Termination is in the best interest of [these children]. Finally, [DCS] has a satisfactory plan for these children, which is adoption.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** by the Court that the parental rights of [Mother] and [Father], parents of [K.C. and K.S.] are hereby terminated.

*Id*. at 50-1. Mother now appeals.

## Discussion and Decision

The Indiana Supreme Court has said,

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

*Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (citations, quotation marks, and alteration omitted).

6

Indiana Code Section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:[1]

(2) The petition must allege:

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

---

[1] Indiana Code Section 31-35-2-4 was amended slightly in 2012. We quote the version of the statute in effect when DCS filed its termination petitions in 2011.

DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. "Clear and convincing evidence need not show that the custody by the parent is wholly inadequate for the child's survival. Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development would be threatened by the parent's custody." *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010) (citation omitted). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re I.A.*, 903 N.E.2d 146, 152-53 (Ind. Ct. App. 2009). In reviewing termination proceedings on appeal, we neither reweigh evidence nor assess witness credibility. *In re J.H.*, 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), *trans. denied*. We consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.* Generally, where the trial court enters findings of fact and conclusions thereon, our standard of review is two-tiered: we first determine whether the evidence supports the findings and then determine whether the findings support the conclusions. *Id.* In deference to the trial court's unique position to assess the evidence, we set aside its findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* "A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it." *Id.* A judgment is clearly erroneous only if the

legal conclusions drawn by the trial court are not supported by its findings of fact or the conclusions do not support the judgment. *Id.*

As already mentioned, Mother does not challenge the correctness of the trial court's factual findings. Therefore, we need only determine whether the findings support the conclusions. Mother challenges only one: that there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied. We note, however, that although DCS was required to establish only one of the three requirements of Indiana Code Section 31-35-2-4(b)(2)(B) by clear and convincing evidence, the trial court concluded that it had established two. Because Mother does not challenge the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the children's well-being, we affirm the trial court's order.

Affirmed.

RILEY, J., and BAILEY, J., concur.