Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 13 2013, 5:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
DCS Marion County
Indianapolis, Indiana

**ROBERT J. HENKE**
Office of the Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF )
THE PARENT-CHILD RELATIONSHIP OF: )
Jo. B. & Ju. B. (Minor Children), and )
T.B. (Mother), )
    Appellant-Respondent, )
     )
        vs. )  No.  49A05-1303-JT-92
     )
THE INDIANA DEPARTMENT OF CHILD )
SERVICES, )
    Appellee-Petitioner. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Larry E. Bradley, Magistrate
Cause No. 49D09-1210-JT-38219
Cause No. 49D09-1210-JT-38220

**September 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

T.B. ("Mother") appeals the termination of her parental rights as to Ju.B. and Jo.B. ("Children"). She raises the single issue of whether there was sufficient evidence to support the termination court's order.[1] We affirm.

## Facts and Procedural History

In the fall of 2011, Children, having no other way of getting to school, decided to walk. (Tr. at 39, Ex. 1.) Mother called the police, and after the police brought Children back to Mother, Children took off running again. When she caught them, Mother spanked Jo.B. with a belt, and the belt accidentally hit him in the face. (Tr. at 39.)

A Child in Need of Services ("CHINS") petition was filed on October 13, 2011. On October 17, 2011, Children were removed from Mother's care and placed with their maternal great aunt ("Aunt") based on Mother's failure to provide Children with a safe and appropriate living environment free from substance abuse and excessive physical discipline. On January 27, 2012, Mother admitted that Children were CHINS, and the CHINS court entered an order adjudicating Children to be CHINS. On February 17, 2012, the CHINS court ordered Mother to participate in various services.

On October 1, 2012, DCS filed a petition to terminate the parental rights of Mother and Father as to Children. On January 29, 2012, the termination court conducted an

---

[1] Father signed consents to Children's adoption by Aunt, and thus the termination court dismissed without prejudice the termination action with regard to him. (Tr. at 127, 148-49; App. at 21.) As best we can discern, Mother appears to argue that it was not in the children's best interests for the termination court to have allowed Father to consent to their adoption. (Appellant's Br. at 14-15; Appellant's Reply Br. at 4.) However, Father's consent to Children's adoption involved his substantial rights, and Father is not an active party to this appeal.

2

evidentiary hearing, and Father signed consents to Children's adoption by Aunt; the termination court dismissed without prejudice the termination action with regard to him. (Tr. at 127, 148-49; App. at 21.) On February 14, 2013, the termination court issued its Order terminating Mother's rights as to Children.

Mother now appeals.

## Discussion and Decision

The termination court made specific findings of fact and conclusions thereon, therefore we apply a two-tiered standard of review. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. Id. We will not set aside the termination court's judgment terminating a parent-child relationship unless it is clearly erroneous. Id. A judgment is clearly erroneous if the findings do not support the termination court's conclusions, or the conclusions do not support the judgment. Id.

Our standard of review is highly deferential in cases concerning the termination of parental rights. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1250 (Ind. Ct. App. 2002), trans. denied. When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Bester, 839 N.E.2d at 147.

3

*Requirements for Involuntary Termination of Parental Rights*

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. See id. The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) that one (1) of the following is true:

    (i)      The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

    (i)      There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A termination court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The termination court must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. The evidence need not rule out all possibility of change; rather, it need establish only "that there is a reasonable probability the parent's behavior will not change." In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). A court need not wait until a child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating a parent-child relationship. In re J.T., 742 N.E.2d at 512.

*Analysis*

Mother challenges the termination of her parental rights, arguing that DCS failed to establish, by clear and convincing evidence: that under Section 31-35-2-4(b)(2)(B)(i) there was a reasonable probability that the conditions that led to removal would not be remedied; that under Section 31-35-2-4(b)(2)(B)(ii) there was a reasonable probability that continuation of the parent-child relationship would pose a threat to the well-being of the children; and that under Section 31-35-2-4(b)(2)(C) termination was in the best interests of the children.

5

Mother does not challenge the termination court's determination pursuant to Sections 31-35-2-4(b)(2)(A) (removal from parent) or (D) (satisfactory plan).

Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the termination court needed to find only that one of the three requirements of Section 31-35-2-4(b)(2)(B) had been established by clear and convincing evidence. See L.S., 717 N.E.2d at 209. Here, the termination court entered findings under both sub-sections (B)(i) (reasonable probability conditions will not be remedied) and (B)(ii) (reasonable probability of threat to well-being of the children). (App. at 21-24.) Because we find it to be dispositive under the facts of this case, we consider only whether DCS established, by clear and convincing evidence, that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. See I.C. § 31-35-2-4(b)(2)(B)(i). The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." In re A.I., 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), trans. denied.

Mother has an extensive history of alcohol and marijuana abuse. (Tr. at 53.) Shortly after the opening of the CHINS case, she tested positive for marijuana. (Tr. at 150-56; Ex. 1.) She has admitted that she had issues with alcohol and marijuana. (Tr. at 165, 167.) Further, she has been convicted of several offenses, including Possession of Cocaine, as a Class D felony, Public Intoxication as a Class B misdemeanor, and Failure to Stop After an Accident as a Class C misdemeanor. (Ex. 26.)

Mother was referred to services at an Intensive Outpatient Program ("IOP"), but she did not begin participating until several months after the referral, and then her participation was inconsistent. (Tr. at 173, 176, 239-40.) By December of 2012, the IOP was considering terminating her from the program for missed classes. (Tr. at 208.) Mother also was ordered to participate in random substance abuse screening through a different provider. (Tr. at 52.) However, Mother has been unable to produce five consecutive clean drug screen results. (Tr. at 189.) Mother self-reported relapsing on alcohol twice since September of 2012, and tested positive for the substance on December 14, 2012. (Tr. at 53-55.)

Mother has been diagnosed with chronic major depressive disorder. (Tr. at 100.) She has had an unstable pattern of living accommodations, and her income has been inconsistent, at best. (Tr. at 33-38.) As of the termination hearing, Mother was living with her sister, her sister's boyfriend, and her sister's four children. Further, FCM Spurgeon testified that Mother has no legal, stable source of income. (Tr. at 193.)

Aunt testified that Children exhibited "raw" behavior when they first came to live with her. (Tr. at 282.) Children's behavior and school performance have improved since being placed with Aunt, and they are tutored at the Sylvan Learning Center. (Tr. at 195-96.) Children both take ADHD medication, and Jo.B. has Hirschsprung's Disease and chronic asthma, for which he takes medication. (Tr. at 121-22.)

DCS presented clear and convincing evidence from which the termination court could conclude that there was a reasonable probability that the conditions that led to the removal would not be remedied.

7

Mother also challenges the termination court's determination relating to the best interests of the children. In determining what is in the best interests of the children, the termination court is required to look beyond the factors identified by DCS and to consider the totality of the evidence. In re J.S., 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the termination court must subordinate the interests of the parent to those of the children. Id. The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Id. Moreover, we have held that the recommendations of the case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the children's best interests. Id. (citing In re M.M., 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Here, we have decided, supra, that there was clear and convincing evidence from which the termination court could conclude that there was a reasonable probability that the conditions that led to the removal would not be remedied. Further, FCM Spurgeon testified that termination of the parent-child relationship between Mother and Children would be in the children's best interests, and guardian ad litem Holly Lester testified that the children should be placed permanently with Aunt. (Tr. at 192, 318-19.)

To the extent that Mother argues that relapses are common while recovering from substance abuse and that she simply needs more time to be ready to get her children back, she asks that we reweigh the evidence, which we cannot do. See In re A.A.C., 682 N.E.2d at 544. DCS presented clear and convincing evidence from which the termination court could

8

conclude that the termination of parental rights is in the children's best interests.

## Conclusion

DCS established by clear and convincing evidence the requisite elements to support the termination of Mother's parental rights.

Affirmed.

MAY, J., and BRADFORD, J., concur.