**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 25 2014, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT B.J.M.:

**TIMOTHY E. STUCKY**
Blume, Connelly, Jordan,
Stucky & Lauer, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLANT G.C., SR.:

**CORY A. SPREEN**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: M.C. and G.C. (Children in Need of Services), | ) ) ) ) | |
| B.J.M. (Mother) and G.W.C. (Father), | ) ) | |
| Appellants-Respondents, | ) ) | |
| vs. | ) ) | No. 02A04-1406-JT-270 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
The Honorable Lori K. Morgan, Magistrate
Cause Nos. 02D08-1309-JT-93 and 02D08-1309-JT-94

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

B.M. (Mother) and G.W.C. (Father) appeal the trial court's order terminating the parent-child relationship between Mother and M.C. and G.C., and between Father and M.C. Mother and Father each argue that the evidence was insufficient to support the termination. Finding the evidence sufficient and finding no other error, we affirm.

FACTS

Mother is the parent of M.C.,[1] born on January 31, 2011, and G.C., born on September 18, 2012. Father is the parent of G.C. On September 19, 2012, the Department of Child Services (DCS) received a report alleging that the children were children in need of services (CHINS) based on allegations of domestic violence between the parents, drug use by both parents, and criminal activity by both parents. The children were removed from the care and custody of the parents in September 2012. Mother and Father eventually admitted that the children were CHINS.

As part of its dispositional decree, which was issued on December 11, 2012, the trial court ordered the parents to do as follows:

- Refrain from criminal activity
- Participate in supervised visitation
- Maintain clean, safe, and appropriate housing
- Submit to random drug screens and refrain from the use of illegal drugs

---

[1] The father of M.C. voluntarily relinquished his parental rights and is not participating in this appeal.

- Submit to a diagnostic assessment and follow all recommendations stemming from that assessment
- Enroll in family counseling, attend all sessions, and successfully complete the program
- Mother was ordered to enroll in drug and alcohol counseling, attend all sessions, and successfully complete the program

Tr. Ex. 9. In June 2013, the trial court amended the dispositional decree by removing the requirement for family counseling and adding a requirement that Father complete parenting education, anger management counseling, and an intensive outpatient drug and alcohol program.

On September 9, 2013, the trial court changed the children's permanency plan from reunification to adoption, and on the same date, DCS filed petitions to terminate the parental rights of Mother and Father. Tr. Ex. 15. The trial court held evidentiary hearings on the petitions on February 4, 19, and 20, 2014.

With respect to Father, evidence presented at the termination hearings established that he delayed completing the court-ordered substance abuse assessment for months. In February 2013, he admitted to the DCS family case manager (FCM) that he was actively using heroin. Father finally completed the substance abuse assessment in February 2013 but was on the run from law enforcement and then incarcerated for a parole violation before he began participating with substance abuse services. In June 2013, Father was released from incarceration and began to participate with substance abuse services. Father stopped participating, however, missing multiple group therapy appointments and drug screens, and the services were eventually closed unsuccessfully.

3

During the CHINS proceedings, Father had multiple encounters with law enforcement. In February 2013, Father was charged with domestic battery. After violating his parole in February 2013, he went on the run until April 2013, when he was arrested and incarcerated until June 2013.

One of the primary reasons that the CHINS case was opened was because of domestic violence between Father and Mother. During the course of the CHINS proceedings, their relationship ended, but Father continued to harass Mother, causing Mother to be afraid for her safety. Father also left a voicemail for the FCM saying that "[y]ou're a fucking nigger bitch and you're going to get yours." Tr. p. 261.

Father only attended five visitations with G.C. during the CHINS proceeding. He missed multiple visits and did not return calls to reestablish visits after they were placed on hold because of his failure to participate. He also failed to maintain stable and suitable housing, moving frequently during the CHINS proceedings. In August 2013, Father moved to Texas, claiming that he had gotten a job on an oil rig. He still lived in Texas at the time of the termination hearing and had never provided any documentation to DCS verifying his employment. Father failed to participate with parenting education or anger management counseling. Father did not appear in person at the termination hearings, and while he participated telephonically at the February 4, 2014, hearing, he hung up after stating, "You know what? You all can proceed without me. I mean, fuck that. See ya." Tr. p. 7. Father did not participate telephonically or in person after hanging up the phone.

4

With respect to Mother, the evidence presented at the termination proceeding established that she failed to complete a substance abuse treatment program successfully. Her first substance abuse treatment program began in November 2012, but she completed only four out of forty required hours and failed to complete any drug screens. In July 2013, Mother admitted that she was using heroin on a daily basis and that she was dating her drug dealer. She began another program in August 2013, but she attended only four sessions, submitted only one drug screen, and eventually quit the program. On December 23, 2013, Mother's home-based case manager witnessed Mother stumbling groggily out of the bathroom and observed a bag full of syringes on the kitchen table. In January 2014, Mother went to an inpatient detoxification program, after which she was to report to a treatment center. She failed to report and did not complete the treatment as required.

On August 27, 2013, Mother was found guilty of possession of paraphernalia, violating the Alcohol Countermeasures Program when she tested positive for illegal substances in November 2013. On January 3, 2014, the State charged Mother with class D felony theft.

Mother failed to maintain suitable and stable housing during the CHINS proceedings. Initially, she lived in a motel, then she lived with Father and his mother, then she moved into a trailer, and after she was evicted from the trailer, she moved in with friends. Mother failed to complete parenting education classes and did not successfully complete home-based case management because she no-showed eleven

5

times during the pendency of the case. Mother was also unsuccessfully discharged from home-based therapy because of her failure to maintain contact with the therapist.

With respect to visits with the children, in October 2012, Mother had supervised visits in her home. The visits were moved to in-office visits in January 2013 because of concerns about domestic violence and drug use in the home. Mother had the opportunity to visit with the children for thirty hours a week, but she never utilized all of those hours. In September 2013, she had visits three times a week, then the visits became twice a week for four hours apiece, then in October 2013, her visits were reduced to six hours per week. Between October 2012 and December 2013, Mother's visits were placed on hold five times because she failed to show on multiple occasions. Her last visit with the children occurred on November 26, 2013. In all, Mother no-showed for visits on sixteen occasions. Mother was not present at all for the termination hearings.

At the hearings, the FCM and the children's Guardian ad Litem (GAL) testified that termination of parental rights was in the children's best interests. On May 20, 2014, the trial court issued lengthy and detailed findings of fact supporting its decision to terminate the parental rights of Mother and Father. Mother and Father now appeal.

## DISCUSSION AND DECISION

Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. K.T.K. v. Ind. Dep't of Child Servs., 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable

inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. Id. Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. Id. In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. Id. at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 148 (Ind. 2005).

Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

(A)   that one (1) of the following is true:

    (i)   The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)   A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)   that one (1) of the following is true:

7

> (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii)   There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)  that termination is in the best interests of the child; and
>
> (D)  that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. K.T.K., 989 N.E.2d at 1230.

In this case, Mother and Father both challenge the trial court's conclusion that there was a reasonable probability that the conditions resulting in the removal of the child would not be remedied.[2] In considering this conclusion, the trial court must judge a parent's fitness to care for his child at the time of the termination hearing, but must also evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).

With respect to Father, the record reveals that he failed to complete substance abuse services successfully. He also failed to submit to random drug screens on a regular

---

[2] Father also challenges the conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the child's well-being. We note that because the requirements of Indiana Code section 31-35-2-4(b)(2)(B) are written in the disjunctive, DCS need only prove one of the three elements. B.H. v. Ind. Dep't of Child Servs., 989 N.E.2d 355, 364 (Ind. Ct. App. 2013). Inasmuch as we find herein that DCS proved the first element in subparagraph (B), we need not also address the trial court's conclusion that the continuation of the relationship would pose a threat to G.C.'s well-being.

basis and admitted in February 2013 that he was actively using heroin. He was on the run from law enforcement for three months during the CHINS case, and then incarcerated for another three months after that. Father failed to maintain stable housing, failed to complete parenting education, and failed to complete anger management counseling. He threatened the FCM, and his behavior made Mother fear for her safety. He attended only five visitations with G.C. during the CHINS proceeding and failed to return calls to reestablish visits once they were placed on hold for his failure to participate. Father failed to attend the termination hearings or participate telephonically, with his one brief moment of participation ending with an epithet and a hangup.

While he claimed that he was living in Texas at the time of the termination proceedings and was gainfully employed, he failed to provide verification of his housing or employment to DCS. And regardless of his employment status, his wholesale failure to complete—or even meaningfully participate in—any court ordered service during the course of the CHINS proceeding constitutes clear and convincing evidence that there was a reasonable probability that the conditions resulting in the removal of the child would not be remedied.

With respect to Mother, the record reveals that she also failed to complete a substance abuse treatment program successfully. Although she began such programs multiple times, she failed to participate meaningfully and was repeatedly discharged unsuccessfully. In July 2013, Mother admitted she was using heroin on a daily basis, and in December 2013, Mother was observed to be under the influence of an unknown

substance and her home was observed to have an unexplained bag full of syringes. During the course of the CHINS case Mother was found guilty of possession of paraphernalia and charged with class D felony theft. She failed to maintain suitable and stable housing, failed to complete parenting education classes, failed to complete domestic violence counseling, and was unsuccessfully discharged from home-based therapy and case management for failure to participate. Mother was originally given thirty hours of visitation with the children but those hours were continually scaled back in both frequency and duration because of her failure to attend and participate. Her visits were placed on hold five times because of her no shows, and her last visit with the children occurred in November 2013.

We find that Mother's failure to complete any court-ordered service during the course of the CHINS proceeding, including visiting with her children, constitutes clear and convincing evidence that there was a reasonable probability that the conditions resulting in the removal of the child would not be remedied.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.