## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2017, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Luisa M. White
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re Termination of the Parent-Child Relationship of:<br>K.D.L., K.A.L.J., & K.R.L.L.<br>*(Minor Children)*<br><br>and<br><br>K.D.J., Jr. *(Father)*,<br><br>*Appellant-Respondent,*<br><br>     v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | November 15, 2017<br><br>Court of Appeals Case No.<br>79A05-1705-JT-1151<br><br>Appeal from the Tippecanoe Superior Court<br><br>The Honorable Faith Graham, Judge<br><br>Trial Court Cause Nos.<br>79D03-1608-JT-84<br>79D03-1608-JT-85<br>79D03-1608-JT-86 |

**Robb, Judge.**

# Case Summary and Issue

[1] K.D.J., Jr. ("Father") appeals the juvenile court's order terminating his parental rights to his children K.D.L., K.A.L.J., and K.R.L.L. Father raises several issues for our review, which we consolidate and restate as whether the juvenile court's termination order is clearly erroneous. Concluding the juvenile court's order is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Father and K.L.-M. ("Mother") are the parents of six-year-old K.D.L., five-year-old K.A.L.J., and three-year-old K.R.L.L. ("Children"). Father and Mother were never married and Mother is now married to J.M. ("Stepfather").

[3] On August 28, 2015, Mother and Stepfather were arrested for possession of synthetic drugs and operating a vehicle while intoxicated. K.R.L.L. was in the vehicle when Mother and Stepfather were arrested. At the time of their arrest, Father was incarcerated in the Indiana Department of Correction ("DOC") for his convictions of residential entry and possession of a controlled substance.[1] Due to Father's incarceration and Mother and Stepfather's arrest and alleged substance abuse, the Indiana Department of Child Services ("DCS") removed

---

[1] Father's criminal history includes convictions for residential entry and attempted theft in 2006; possession of marijuana and possession of paraphernalia in 2009; trespass, possession of marijuana, failing to stop after an accident, and two convictions of resisting law enforcement in 2011; trespass, residential entry, and possession of a controlled substance in 2014.

Children from Mother and Father's care and filed a petition alleging the Children were children in need of services ("CHINS").[2]

[4] On November 17, 2015, the juvenile court entered its order adjudicating the Children as CHINS. On December 10, 2015, the juvenile court entered its dispositional order. The juvenile court ordered Father, upon release from prison, to: (1) contact DCS within twenty-four hours of his release; (2) participate in visits with the Children; (3) participate in and follow recommendations of home-based case management; (4) participate in and follow recommendations of therapy; (5) remain drug and alcohol free; (6) submit to random drug screens; (7) follow the terms of his probation; and (8) obtain and maintain stable housing and income.

[5] Father was released from incarceration on February 8, 2016. Following his release, Father contacted DCS and met with his family case manager, Sally Messmer. Messmer provided Father with contact information for his referred services and informed him to stay away from Mother because she had a protective order against him. Father then participated in one visitation with the Children before he was arrested on February 22, 2016, for violating Mother's protective order. Father was charged with invasion of privacy, pleaded guilty, and served thirty days in prison before his release in March of 2016.

---

[2] Prior to this CHINS proceeding, Father and Mother were involved in a previous CHINS case stemming from allegations of domestic violence and drug use. Mother and Father both engaged in services and DCS reunited the Children with Mother.

[6]     DCS referred Father to multiple services following his release from incarceration. DCS referred Father to George Junior Republic for visitation, home-based case management, and individual therapy services. Father met with George Junior Republic on one occasion to work on finding housing and employment. George Junior Republic later discharged Father from its services "due to the inability to service the family." Exhibits, Volume 1, Exhibit 6 at 9.

[7]     In April of 2016, DCS referred Father to Wabash Valley Alliance for therapy services, but Father did not follow through. Father only began services in August of 2016 and met with Wabash's clinical supervisor on one occasion. The clinical supervisor recommended meeting again to determine what services may be needed but Father never followed up or met with anyone from Wabash Valley Alliance again.

[8]     DCS also referred Father to Lifeline Youth for supervised visits with the Children and case management. Father's case manager, Diane Pinckney, testified that Father had been "doing a pretty good job[,]" but missed quite a few appointments towards the end when he stopped "showing up or participating." Transcript, Volume 2 at 120, 122. When Pinckney spoke with Father by telephone inquiring into why he missed appointments, Father told her he "ran because he found out there was a warrant for his arrest for violating his probation." *Id.* at 122. Lifeline Youth later discharged Father for having too many cancellations.

[9] As for Father's employment, Father was employed at two different jobs from March to September of 2016, working at each job for about a month. Also, during this time, Father was ordered to submit to random drug screens. All told, Father failed to report for eleven drug screens and tested positive for drugs on two different occasions.

[10] On August 16, 2016, DCS filed petitions to terminate Father's and Mother's parental rights to each of the Children. On September 16, 2016, Father was arrested for possession of marijuana and the State filed a notice of probation violation. Father remained incarcerated until November 14, 2016. The juvenile court held evidentiary hearings on the petitions on October 13, 2016, and January 24, 2017. On May 3, 2017, the juvenile court entered its order terminating Father's and Mother's parental rights. The juvenile court concluded, in relevant part:

CONCLUSIONS OF LAW

1.  There is a reasonable probability the conditions that resulted in removal of the children or the reasons for continued placement outside the home will not be remedied. Neither parent has demonstrated the ability or willingness to make lasting changes from past behaviors. There is no reasonable probability that either parent will be able to maintain safety and stability to care for the children.

2.  Continuation of the parent-child relationships poses a threat to the well-being of the children. The children need stability in life. The children need parents with whom the

> children can form a permanent and lasting bond to provide
> for the children's emotional and psychological as well as
> physical well-being.
>
> * * *
>
> 4.    For the foregoing reasons, it is in the best interests of
> [Children] that the parental rights of [Mother] and [Father]
> be terminated.

Appellant's Appendix, Volume II at 35.  Father now appeals.[3]

# Discussion and Decision

## I.  Standard of Review

Involuntary termination of parental rights is "an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed." *In re C.G.*, 954 N.E.2d 910, 916 (Ind. 2011).  Indiana Code section 31-35-2-4(b)(2) provides, in pertinent part, what must be proven in order to terminate parental rights:

> (2) The petition must allege:
>
> * * *
>
> (B) that one (1) of the following is true:

---

[3] Mother also filed a notice of appeal, but her appeal was dismissed upon her own motion.

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

\* \* \*

(C) that termination is in the best interests of the child . . . .

The State must prove each element by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009). "[I]f the court finds that the allegations in a petition . . . are true, the court shall terminate the parent-child relationship." Ind. Code § 31-35-2-8(a). "When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." *In re G.Y.*, 904 N.E.2d at 1260. Rather, we consider only the evidence and reasonable inferences most favorable to the juvenile court's judgment. *Id.*

[12] In addition, because the juvenile court entered findings of fact and conclusions thereon in terminating Father's parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We set aside a juvenile court's judgment only if it is clearly erroneous. *Id.* A judgment is "clearly erroneous if the findings do not support the . . . conclusions or the conclusions do not support the judgment." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).

# II. Termination Order

[13] Father contends the juvenile court's order was clearly erroneous in several respects. He argues DCS failed to prove the conditions resulting in the Children's removal will not be remedied; DCS failed to prove he posed a threat to the Children's well-being; and DCS failed to prove termination was in the Children's best interest.

[14] First, Father argues DCS failed to prove there was a reasonable probability the conditions leading to the Children's removal will not be remedied. In determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for his child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). However, the juvenile court's inquiry must also evaluate a parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. *Id.* The juvenile court may properly consider "evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *A.F. v. Marion Cty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The juvenile court may also consider the services the DCS has offered to a parent and the response to those services. *In re M.S.*, 898 N.E.2d 307, 311 (Ind. Ct. App. 2008).

[15] A parent's history of incarceration and the effects upon the children is also a relevant consideration. *In re A.A.C.*, 682 N.E.2d 542, 545 (Ind. Ct. App. 1997).

Individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children. *In re A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992). Finally, the DCS is not required to rule out all possibilities of change. Rather, it need establish "only that there is a reasonable probability that the parent's behavior will not change." *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[16] In removing the Children from Father's and Mother's care and placing them in foster care, the CHINS petition noted substance abuse on the part of Mother and Stepfather, and Father's incarceration in the DOC. Following the Children's CHINS adjudication and Father's release from prison, Father was ordered to, among other things, participate in and follow recommendations of DCS, remain drug and alcohol free, submit to random drug screens, follow the terms of his probation, and obtain and maintain stable housing and income.

[17] From the filing of the CHINS petition to the termination hearing, Father was not compliant with the services offered by DCS, tested positive for drugs on two occasions and failed to submit to eleven drug screens, only had stable income for about two months, and was incarcerated on two different occasions for committing crimes. Contrary to Father's argument, DCS did not seek to terminate his parental rights solely on the basis of his criminal history and incarceration. Rather, his repetitive criminal behavior combined with his failure to follow through with programs and services offered by DCS and his inability or unwillingness to care for his children for any length of time leads to

the conclusion the issues resulting in the Children's removal from his care will not be remedied.[4]

[18] Father also points to evidence of changed conditions and asserts by the time of the final termination hearing, he was enrolled in and taking classes at Ivy Tech and working full time at McDonalds. However, evidence of changed conditions are balanced against habitual patterns of conduct to determine whether there is a substantial probability of future neglect. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). We give deference to the juvenile court in balancing this evidence, and the juvenile court has discretion to weigh a parent's prior history more heavily than efforts made prior to termination. *Id.* Here, Father's repetitive criminal history and unwillingness to take appropriate action when he had the opportunity to do so weighs heavily against him and evidences a reasonable probability his behavior will not change long-term. The juvenile court did not clearly err in concluding the evidence shows a reasonable probability the conditions resulting in the Children's removal will not be remedied.[5]

---

[4] Father's argument that the testimony and evidence concerning his participation in DCS programs reveals "many positives[,]" Father's Appeal Brief at 17, is merely a request to reweigh the evidence, which we cannot do. *In re G.Y.*, 904 N.E.2d at 1260.

[5] Father also contends the juvenile court erred in concluding that continuation of the parent-child relationship posed a threat to the Children's well-being. However, Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires only one element in that subsection be true to terminate parental rights. *See In re I.A.*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009). Because we conclude the evidence is sufficient to show a reasonable probability the conditions resulting in the Children's removal will not be remedied, we need not determine whether the juvenile court erred in concluding continuation of the parent-child relationship posed a threat to the Children's well-being.

[19] Father also contends DCS failed to prove termination was in the Children's best interest. "In determining what is in the best interests of the [Children], the [juvenile] court is required to look beyond the factors identified by the DCS and look to the totality of the evidence." *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009).

> The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Recommendations of the case manager and court-appointed advocate, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the [Children's] best interests.

*In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (citations omitted), *trans. denied*.

[20] As noted above, there is sufficient evidence that the conditions resulting in the Children's removal will not be remedied. In addition, the DCS case manager recommended termination.

> [DCS]: Ms. Messmer, as you sit here today, do you believe it's in the children's best interest for their parental rights to be terminated?
>
> [Messmer]: Yes.

Transcript, Vol. 2 at 163. Finally, we note the Children need stability and have been cared for by foster parents for over two years.

Accordingly, DCS presented clear and convincing evidence from which the juvenile court could conclude that termination of Father's parental rights was in the best interests of the Children.

# Conclusion

DCS established by clear and convincing evidence the requisite elements to support the termination of Father's parental rights. The judgment of the juvenile court terminating Father's parental rights is affirmed.

Affirmed.

Riley, J., and Pyle, J., concur.