**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 20 2014, 10:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**BRADLEY K. KAGE**
North Vernon, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: P.M., M.F.E., and E.T., | ) ) ) ) |
| T.T. (Mother) and B.T. (Father of E.T.), | ) ) |
| Appellants-Respondents, | ) ) |
| vs. | ) ) |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) ) |
| Appellee-Petitioner. | ) |

No. 40A01-1306-JT-275

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-1109-JT-245, JT-247, and
40C01-1204-JT-4

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

T.T.[1] ("Mother") appeals the termination of her parental rights to P.M., M.E., and E.T., and B.T. ("Father") appeals the termination of his parental rights to E.T.[2] We affirm.

## Issue

Mother and Father raise one issue, which we restate as whether there was sufficient evidence to support the termination of their parental rights.

## Facts

P.M. was born on September 2, 2008, in Jennings County. The Department of Child Services ("DCS") became involved because P.M. was born with drugs in her system. Mother entered into an informal adjustment and, although she did not complete the recommended services, the informal adjustment was closed in July 2009.

DCS became involved with Mother again in January 2010 because she tested positive for marijuana when she arrived at the hospital to give birth to M.E., who was born with morphine and marijuana in his body. Although the children remained in Mother's care, DCS filed a petition alleging P.M. and M.E. were children in need of services ("CHINS"), and they were found to be CHINS. Mother was ordered to, among

---

[1] Mother is also referred to as T.E.

[2] P.M. and M.E.'s father's parental rights were also terminated. He does not appeal.

other things, maintain suitable housing, find and maintain a legal and stable source of income, refrain from using illegal controlled substances or unprescribed medication, participate in home-based services, complete parenting and substance abuse assessments and all recommendations, submit to drug screens, and obtain a GED or high school diploma.

In June 2010, DCS moved to modify the dispositional decree because Mother had not been compliant with services, continued to use marijuana, and had been arrested on warrants from Jennings and Jackson Counties. The allegations were found to be true, and the children were removed from the home.

E.T. was born on May 2, 2011, and DCS filed a petition alleging that E.T. was a CHINS because he was born with marijuana in his body. Mother and Father admitted the allegations, and E.T. was placed in foster care with P.M. and M.E. Mother and Father married in July 2011. Mother and Father were ordered to participate in the same services that had previously been ordered as well as to complete a psychological evaluation and to complete all recommendations and attend all scheduled visitations.

Mother's participation in services was sporadic and, on September 6, 2011, DCS filed a petition to terminate Mother's parental rights to P.M. and M.E. Services were still being provided to Mother and Father because of E.T.'s ongoing CHINS case. DCS filed a petition to terminate Mother's and Father's parental rights to E.T. on April 23, 2012, at which point DCS stopped providing services.

3

On September 19, 2012, a hearing was held on the petitions to terminate Mother's and Father's parental rights and, on February 7, 2013, the trial court issued an order terminating Mother's and Father's parental rights. The trial court found in part:

21. Neither [Mother] nor [Father] completed or benefited from any services offered during the time services were provided. [Mother] began, but never completed, a psychological evaluation. Mental health counseling was recommended pursuant to the unfinished evaluation, but [Mother] still failed to even begin such counseling. [Father] also failed to complete a psychological evaluation or begin mental health counseling in lieu of completing the evaluation. As transportation had previously been an issue for [Mother] and [Father], supervised visitation was moved to their home, yet the parents still attended less than 62% of the scheduled visits. The parents were inconsistent with home-based case management services for resourcing and parenting education. [Mother] testified positive for THC in September, October, and November 2011 and then refused a drug test in December 2011.

22. [P.M., M.E., and E.T.] are children with severe developmental issues and special needs. [P.M.] has learning disabilities, ADHD and severe anxiety issues, and Reactive Attachment Disorder. She has bowed legs that will require surgery in 2013 to correct. [M.E.] has Pica, an eating disorder that causes him to eat items such as plaster, feces, and garbage. He has been diagnosed with Long QT Syndrome, which causes heart issues and, potentially, sudden death. [M.E.] also has undescended testicles that put him at risk for childhood testicular cancer. [E.T.] had feeding issues at birth and at sixteen (16) months of age, was still eating baby food and formula. He is developmentally delayed in motor, social, and cognitive skills. [E.T.] suffers from grand mal seizures and white brain matter loss and must be transferred to Riley Children's Hospital upon any sign of seizure.

23. The children's special needs require a great deal of medical attention. [Foster Mother] testified that [P.M.] sees a psychologist in Indianapolis every week and an occupational

4

therapist in Columbus every week. [P.M.] also has to see an eye doctor every few weeks as she destroys eyeglasses. [M.E.] sees a developmental and occupation therapist every week and an allergist every three (3) months. [E.T.] sees a neurologist at Riley every three (3) months and gets blood work every six (6) weeks. He also receives occupational, developmental, and physical therapy every week. The various medical/therapist appointments for the children require [Foster Mother] to be in Columbus two (2) days and Indianapolis one (1) day each week. At the time of the termination trial, neither [Mother] nor [Father] had driver's licenses or stable employment. They own a vehicle, but it has no valid license plate.

24.     Throughout the underlying CHINS's cases, none of the parents demonstrated an ability to parent the children, especially the children with the extent of special needs that [P.M., M.E., and E.T.] have . . . [Mother] and [Father], although partially compliant from time to time, failed to complete services and/or failed to demonstrate an ability to benefit from services they had received.

25.     No service provider was ever able to recommend that any of the children be reunified with [Mother] and/or [Father] . . . . This was either because the parents failed to improve his/her parenting abilities and demonstrate he/she was able to care for the children, or because he/she failed or refused to follow through with services and appointments, thereby limiting the service provider's ability to make an informed decision as to that parent.

26.     Based on each parent's lack of progress, and each's refusal or inability to improve his/her ability to provide proper care and nurturing for the children, DCS Family Case Manager, Deborah K. Satterfield, testified that termination of parental rights and adoption was in children's best interests. The CASA, Patricia Park, also filed a written report with the Court on September 19, 2012, which is made a part hereof by reference, and which recommends termination of the parental rights . . . . Ms. Park testified that she does not feel the children could ever return to the home due [sic] their behaviors and medical conditions. [Mother] is employed.

5

App. pp. 46-48. The trial court concluded there is a reasonable probability that the conditions resulting in removal and continued placement outside the home will not be remedied and that the continuation of the parent-child relationship poses a threat to the children's well-being. The trial court also concluded that termination of parental rights is in the children's best interests. Mother and Father now appeal.

**Analysis**

Mother and Father contend that the evidence is insufficient to support the termination of their parental rights. "When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences most favorable to the judgment. Id. "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses." Id. (quoting Indiana Trial Rule 52(A)). Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review. Id. "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." Id. We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

A petition to terminate a parent-child relationship must allege:

> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

6

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS has the burden of proving these allegations by clear and convincing evidence. I.A., 934 N.E.2d at 1133.

### I. Threat to Well-Being[3]

---

[3] Mother and Father argue there is insufficient evidence to support the findings that the conditions resulting in the children's removal will not be remedied and that the continuation of the parent-child relationship poses a threat to the children's well-being. Because Indiana Code Ssection 31-35-2-

7

As an initial matter, Mother and Father do not provide separate arguments addressing the trial court's findings that the conditions resulting in removal would not be remedied and that the continuation of the parent-child relationship posed a threat to the children's well-being. Instead, they argue generally that the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. See In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Mother and Father contend that, because no services were provided from April 2012 until the September 2012 hearing, the trial court could not have considered their fitness at the time of the hearing. To the extent this is relevant to the consideration of whether the continuation of the parent-child relationship poses a threat to the children's well-being, we disagree. Although services were not provided during that time, Mother's and Father's testimony allowed the trial court to consider any improvements from April until September. Further, it is clear that the trial court considered Mother's and Father's testimony when it found that, at the time of the hearing, Mother was employed but neither one of them had a driver's license. Thus, Mother and Father have not established that the trial court failed to consider their circumstances at the time of the final hearing.

Regarding the sufficiency of the evidence, the evidence supports the trial court's finding that there is a reasonable probability that the continuation of the parent-child

---

4(b)(2)(B) is written in the disjunctive, the trial court only had to find that one of the three requirements had been met before terminating Mother's and Father's parental rights. See B.H. v. Indiana Dep't of Child Servs., 989 N.E.2d 355, 364 (Ind. Ct. App. 2013). Because the evidence supports the finding that the continuation of the parent-child relationship poses a threat to the children's well-being, we need not address the trial court's finding that the conditions resulting in removal will not be remedied. See id.

relationship poses a threat to the children's well-being. There was extensive testimony regarding the children's numerous and serious health issues and developmental delays and the necessary medical treatment, including weekly doctor's appointments in Indianapolis and Columbus. There was evidence of Mother and Father having transportation issues throughout the proceedings and, at the time of the hearing, neither Mother nor Father had a driver's license or a car with a valid registration. The inability to transport the children to their numerous appointments would be harmful to their well-being.

The evidence also showed that four of Mother's five children were born with drugs in their systems and, although Mother completed portions of the substance abuse programs, she did not complete an entire program. Moreover, there was evidence that Mother used marijuana to treat her mental health issues but did not participate in any of the mental health services offered by DCS other than to begin, but not complete, a psychological evaluation. Likewise, Father did not complete the required psychological evaluation. Finally, at the time of the hearing, although Mother had been hired, she had not started her job, and Father was unemployed. Based on this evidence, the trial court properly found that the continuation of the parent-child relationship posed a threat to the children's well-being.

To the extent Mother directs us to evidence that she visited regularly with the children and acted appropriately during the visits, completed an intensive-outpatient treatment program, had some negative drug screens, had stable housing for over a year, was drug-free at the time of the final hearing, only had misdemeanor convictions, and

was starting a job, she is asking us to reweigh the evidence. We cannot do this. See I.A., 934 N.E.2d at 1132. Similarly, Father's request that we consider his lack of drug use, his lack of criminal history, and his stable housing is a request to reweigh the evidence, we decline to do so. See id.

## II. Best Interests

Mother and Father assert generally that, in determining whether termination is the children's best interests, the trial court must look beyond the factors identified by DCS and look to the totality of the evidence. See A.J. v. Marion Cnty. Office of Family & Children, 881 N.E.2d 706, 717 (Ind. Ct. App. 2008), trans. denied. Although this is correct statement of the law, Mother and Father do not provide a specific argument regarding the children's best interests. In light of the trial court's findings and the evidence discussed above, Mother and Father have not established that termination was contrary to the children's best interests.

## Conclusion

Mother and Father have not established that the evidence is insufficient to support the termination of their parental rights. We affirm.

Affirmed.

ROBB, J., and BROWN, J., concur.