**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 12 2014, 9:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHERYL A. GRIFFIN**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE            )
TERMINATION OF THE PARENT-      )
CHILD RELATIONSHIP OF:          )
                                )
K.S. (Minor Child),             )
                                )
  and                           )
                                )
W.W. (Father),                  )
                                )
      Appellants-Respondents,   )
                                )
      vs.                       )    No.  34A02-1310-JT-876
                                )
THE INDIANA DEPARTMENT OF       )
CHILD SERVICES,                 )
                                )
      Appellee-Petitioner.      )

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Lynn Murray, Judge
Cause No. 34C01-1304-JT-100

**March 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, W.W. (Father) was forty-nine years old and B.S. (Mother) was fifteen years old when she gave birth to their son, K.S. Because of Father's sexual relationship with Mother, he pleaded guilty to class B felony sexual misconduct with a minor and has been incarcerated for most of K.S.'s life and is not expected to be released until January 2015.

K.S. was almost immediately adjudicated a Child in Need of Services (CHINS) Eventually, K.S. was placed in foster care, and after nineteen months in foster care, Mother's and Father's (collectively, "the Parents") parental rights were terminated.

Father[1] now appeals the juvenile court's order terminating his parental rights to K.S. More particularly, Father argues that the Department of Child Services (DCS) failed to prove by clear and convincing evidence that the conditions that led to K.S.'s removal and continued placement outside the home will not be remedied. Father emphasizes that he has been incarcerated and has been unable to show that he can parent K.S.

---

[1] Mother does not participate in this appeal.

2

Concluding that the DCS presented sufficient evidence to terminate Father's parental rights, we affirm the judgment of the juvenile court.

FACTS

K.S. was born to Mother and Father on May 10, 2008. Father has seven other children – six of whom were adjudicated CHINS with two of those cases ending in Father having his parental rights terminated. Father was not incarcerated during that time and blames the children's mothers for the CHINS adjudications and subsequent parental terminations: "I've never really had no problems. It's just like the women I've been with is where I've had the problems." Tr. p. 82.

On January 26, 2009, when K.S. was approximately eight months old, Father pleaded guilty to class B felony sexual misconduct with a minor for engaging in a sexual relationship with Mother. Father was forty-nine years old at the time while Mother was only fifteen years old. Father was sentenced to twelve years in the Department of Correction (DOC) and ordered to register as a sex offender upon his release. At the time of the termination hearing, Father was still incarcerated, and his earliest possible release date is January 22, 2015.

On September 26, 2008, the juvenile court removed K.S. because there were no suitable caregivers for him. The DCS filed a CHINS petition on September 30, 2008, and the juvenile court adjudicated K.S. a CHINS after Mother admitted, in relevant part, that she had been adjudicated a delinquent child and was placed in Morningstar Girls Home, she was being evaluated for mental health issues including suicidal thoughts, and she was

3

a victim of a sex offense, insofar as Father was forty-nine years old at the time K.S. was conceived while she was fourteen or fifteen years old. Furthermore, Father had not established paternity at that time.

On December 15, 2008, the juvenile court entered a dispositional order requiring Mother to participate in reunification services. Father was incarcerated and unable to participate in services.

On July 12, 2010, the juvenile court conducted a periodic case review and entered its order finding that Father "is incarcerated for sexual abuse on the mother and has taken no steps to establish paternity of the child." Appellant's App. p. 74. On October 25, 2010, the juvenile court found that there was a "No Contact Order" in place between Father and K.S. and that Father was still incarcerated. Id. at 76-77.

On April 9, 2013, the DCS filed a petition to terminate the Parents' parental rights to K.S. On July 29, 2013, Father appeared in the custody of the Howard County Sheriff at an evidentiary hearing on the termination petition.

On September 3, 2013, the juvenile court issued its ruling terminating the parent-child relationship as to both Mother and Father. Regarding Father, the juvenile court determined:

- Father was incarcerated after pleading guilty to class B felony sexual misconduct with a minor after it was determined that K.S. was conceived when Father was forty-nine years old and Mother was only fifteen years old.

- Father did not participate in the CHINS case because of his incarceration.

- Paternity had not been established on K.S.

- Father's earliest release date from the DOC is January 22, 2015, with a possible credit of six months if he passes his GED exam.

- Father has neither seen nor had contact with K.S.

- The DCS is not required to provide parents with services directed at reunification while a parent is incarcerated.

- Father has seven other children, two of whom his parental rights were terminated in CHINS cases.

The juvenile court further opined that Sandra Cross, the court-appointed special advocate (CASA), stated that K.S. is happy with his foster family and is in a safe environment where he is loved and has stability. The juvenile court noted that K.S. should not have to wait at least another year for Father to be released from the DOC, and that given Father's history, "it is unlikely he would ever be determined to be an appropriate care giver for [K.S.]." Appellant's App. p. 25.

The juvenile court determined that it must subordinate the interests of the Parents to those of K.S., and here, the "lack of parenting, stability and support of the child, demonstrates their inability to provide a safe, stable and caring environment for the child." Id. at 25-26. In short, K.S. had waited five years for "his turn" and had been in foster care for nineteen months. Id. at 26. The juvenile court determined that the DCS had a satisfactory plan for K.S., namely adoption by his foster parents. The juvenile court then terminated the Parents' parental rights to K.S. Father now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment below. Id. Here, the juvenile court made specific findings of fact and conclusions of law in its order terminating Father's parental rights.

Where the juvenile court enters specific findings and conclusions, we apply a two-tiered standard of review. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). We first determine whether the evidence supports the findings, and then whether the findings support the judgment. Id. We will not set aside the juvenile court's judgment unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). A judgment is clearly erroneous when the evidence does not support the findings, or the findings do not support the result. In re S.F., 883 N.E.2d 830, 834 (Ind. Ct. App. 2008).

### II. Termination of Father's Parental Rights

### A. Subsection (B) Written in Disjunctive

Father's sole contention is that the DCS failed to prove that the conditions which led to K.S.'s removal would not be remedied upon Father's release from the DOC. Thus, according to Father, the DCS failed to prove by clear and convincing evidence that his parental rights should be terminated.

The relevant part of Indiana Code section 31-35-2-4(b)(2) that Father challenges is Subsection B which provides that one of the following must be shown by clear and convincing evidence:

> (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied

> (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services. [2]

At the outset, we note that Subsection (B) is written in the disjunctive, meaning that the DCS had to prove that the conditions that resulted in the child's removal would not be remedied or that the continuation of the parent-child relationship poses a threat to the well-being of the child. In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999). Father does not argue that the DCS failed to prove that the continuation of the parent-child relationship poses a threat to the well-being of K.S., and accordingly, has waived this argument. See Ind. App. Rule 46(A)(8)(a) (instructing that the contentions of the appellate on the issues presented "must be supported by citations to authorities, statutes, and the Appendix or parts of the Record on Appeal relied on"). Further, as stated above, Father does not dispute any other element that the DCS is required to prove to terminate his parental rights.

---

[2] We observe that Subsection (B)(iii) is inapplicable, and we need not address it other than to note that it too is written in the disjunctive.

## B. Merits of Father's Claim

Nevertheless, a parent's interest in the care, custody, and control of his or her children is "'perhaps the oldest of the fundamental liberty interests.'" In re G.Y., 904 N.E.2d at 1259 (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000)). Moreover, the parent-child relationship is "'one of the most valued relationships in our culture.'" Id. (quoting Neal v. DeKalb Cnty. Div. of Family & Children, 796 N.E.2d 280, 285 (Ind. 2003)). The involuntary termination of parental rights is the most severe action that a juvenile court can take. Stone v. Daviess Cnty Div. of Children & Family Servs., 656 N.E.2d 824, 828 (Ind. Ct. App. 1995) (emphasis added). Consequently, we will address the merits of Father's argument.

In determining whether a parent will not likely remedy the conditions that led to a child's removal, the juvenile court must examine the parent's fitness at the time of the termination hearing. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). At the same time, the juvenile court must evaluate the parent's habitual patterns of conduct to determine if there is a substantial probability of future neglect of deprivation of the child. Id. Among the relevant factors that a juvenile court may consider are a parent's criminal history, drug and alcohol abuse, historical failure to provide support, and lack of adequate housing and employment. McBride v. Monroe Cnty. Office of Family & Children, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

Father argues that, although he is incarcerated and his earliest possible release date is January 22, 2015, the juvenile court should have allowed him the opportunity to parent

K.S. At the time of the termination hearing, K.S. had been a CHINS for nearly five years, and he had been removed from Mother for nineteen months. Appellant's App. p. 60-61, 91-93. While Father blames his children's mothers for becoming CHINS and for his parental rights being terminated, tr. p. 82, "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." In re A.C.B., 598 N.E.2d 570, 572 (Ind. Ct. App. 1992). Indeed, the DCS is not required to provide a parent with services directed at reunification with the child while the parent is incarcerated. Rowlett v. Vanderburgh Cnty. Office of Family & Children, 841 N.E.2d 615, 622 (Ind. Ct. App. 2006). Accordingly, Father did not participate in or complete any services because of his incarceration. Appellant's App. p. 76-77.

Further, when Father is released from the DOC, he will have to register as a sex offender as the result of pleading guilty to class B felony sexual misconduct with a minor. DCS Ex. 4. Moreover, Father admits that he has neither seen nor had contact with K.S. because there is a no contact order between him and K.S. Appellant's App. p. 76-77. Although following Father's release from the DOC, he plans on having surgery, applying for disability and finding a place to live, he has taken no steps to follow through on these plans because of his incarceration. In light of these facts and circumstances, we cannot say that the DCS failed to present clear and convincing evidence that it is reasonably

probable that the conditions that led to K.S.'s continued placement outside the home would not be remedied.[3]

Finally, as stated above, terminating someone's parental rights is the harshest action the juvenile court can take and certainly should be the last resort. In this case, however, CASA Sandra Cross said it best when she stated, "[K.S.] has waited five (5) years for his turn . . . [He] must be able to put the drama, sorrow, and insecurity in the past." Appellant's App. p. 26. While both parents are certain to feel sorrow, their pain must be subordinated to their child's need for permanency and stability for which he has waited so long.

The judgment of the juvenile court is affirmed.

NAJAM, J., and CRONE, J., concur.

---

[3] We also note that the DCS proved by clear and convincing evidence that the continuation of the parent-child relationship between the child and Father posed a threat to the well-being of the child.