**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 31 2014, 10:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JENNIFER A. JOAS**
Joas & Stotts
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF M.F., | ) ) ) | |
| C.F., | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 40A01-1309-JT-392 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) | |
| Appellee-Petitioner. | ) ) | |

---

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-1207-JT-16

---

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

C.F. ("Mother") appeals the trial court's termination of her parental rights over her minor daughter, M.F. ("Child").[1]  Mother raises a single issue for our review, namely, whether the trial court's judgment is clearly erroneous.  We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother gave birth to Child on October 16, 2010.  Mother was eighteen years old and thrice tested positive for opiates during the pregnancy, including when she was admitted to the hospital for Child's birth.  Upon Child's birth, her meconium tested positive for opiates.  The Indiana Department of Child Services ("DCS") became involved in Child's life shortly thereafter.

On November 15, 2010, the DCS filed a petition alleging Child to be a child in need of services ("CHINS").  The court adjudicated Child a CHINS on March 9, 2011.  Following the court's adjudication, Mother did not consistently participate in substance abuse assessments, failed to participate in home-based services, was inconsistent with supervised visitations with Child, and, at one point, was homeless.  By July of 2012, the family case manager had lost contact with Mother and, partly "[d]ue to continual no-shows" by Mother to supervised visits, the court changed Child's permanency plan to adoption. Appellant's App. at 333.

In August of 2012, Mother failed a drug test while pregnant.  She did not follow up with subsequent drug abuse treatment immediately after that failed test, although in early 2013 she successfully completed a thirty-day program at Turning Point in

---

[1] The trial court also terminated the parental rights of M.F.'s biological father, but he does not participate in this appeal.

Jeffersonville. However, she failed to comply with the after-care program and was asked to leave a nearby housing facility for "not taking her recovery seriously." Id. at 334. She was then unsuccessfully discharged from Turning Point.

At the time of the court's fact-finding hearing on the DCS's petition for the involuntary termination of Mother's parental rights, Mother lacked employment and a home of her own, and Child had been in placement with her foster parents for all but the first month of Child's life. Following the fact-finding hearing, the court found:

> 15. . . . The parents' failure to consistently visit with [Child] adversely affected their ability to effectively bond with their daughter. At this point, the [foster parents] are the only parents [Child] has ever known.
>
> 16. Based on Mother's lack of progress in bonding with [Child] and demonstrating an ability to provide for herself or her children, and her refusal or inability to successfully address her substance abuse . . . termination of parental rights and adoption is in [Child's] best interests.

Id. The court further concluded that there is a reasonable probability that the conditions resulting in Child's removal and continued placement outside the home will not be remedied and that the continuation of the parent-child relationship poses a threat to Child's well-being. This appeal ensued.

## DISCUSSION AND DECISION

We begin our review of the trial court's judgment by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." Bailey v. Tippecanoe Cnty. Div. of Family & Children (In re M.B.), 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the

child when evaluating the circumstances surrounding a termination. Schultz v. Porter Cnty. Office of Family & Children (In re K.S.), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> * * *
> (C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31–35–2–4(b)(2).[2] That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights.

In this appeal, we need only consider subsection (i), that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied. As we have explained:

> In determining whether the conditions that led to a child's removal will not be remedied, the trial court must judge a parent's fitness to care for her child at the time of the termination hearing and take into consideration

---

[2] Mother does not challenge the trial court's judgment with respect to Indiana Code Section 31-35-2-4(A) or (D). Further, Indiana Code Section 31-35-2-4(b)(2)(B) also allows the DCS to allege that "[t]he child has, on two (2) separate occasions, been adjudicated a child in need of services." But that additional, alternative provision is not relevant here.

4

evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. When assessing a parent's fitness to care for a child, the trial court should view the parent as of the time of the termination hearing and take into account any evidence of changed conditions. In re C.C., 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), trans. denied. The trial court can properly consider the services that the State offered to the parent and the parent's response to those services. Id. Moreover, a DCS is not required to rule out all possibilities of change, but only needs to establish that there is a reasonable probability the parent's behavior will not change. Moore v. Jasper County Dep't of Child Servs., 894 N.E.2d 218, 226 (Ind. Ct. App. 2008).

D.B. v. Marion Cnty. Dep't of Child Servs. (In re A.B.), 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).

DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.), 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2). When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. Peterson v. Marion Cnty. Office of Family & Children (In re D.D.), 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. Judy S. v. Noble Cnty. Office of Family & Children (In re L.S.), 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). trans. denied.

Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special

findings and conclusions, we apply a two-tiered standard of review.  Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005).  First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment.  Id.  "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference."  Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996).  If the evidence and inferences support the trial court's decision, we must affirm.  In re L.S., 717 N.E.2d at 208.

Mother first argues that the trial court clearly erred when it found certain facts that, according to Mother, are not supported by the record.[3]  In particular, Mother challenges part or all of paragraphs 13, 14, 15, and 16 of the trial court's findings.  But we have reviewed the record and Mother's challenges to these findings are merely requests for this court to reweigh the evidence that was before the trial court, which we will not do.[4]  Mother's challenge to the court's findings must fail.

Mother next asserts that the trial court's conclusion that the conditions that resulted in Child's removal will not be remedied is clearly erroneous.  Specifically, Mother asserts that "[t]here was no evidence presented at the hearing that those issues continue to persist."  Appellant's Br. at 19.  We cannot agree.  As the trial court found, there is ample evidence in the record that Mother persistently abused drugs since before Child's birth, struggled with substance abuse treatment, was inconsistent with visiting

---

[3] The DCS asserts that this argument is irrelevant since the unchallenged findings of fact support the trial court's judgment.  But the DCS does not tell this court what those supporting, unchallenged facts might be.  See Appellee's Br. at 17-18.

[4] Insofar as Mother asserts that the trial court merely recited witness testimony in paragraph 16 rather than entering a finding of fact, we disagree and read that paragraph to state a finding of fact.

6

Child or otherwise completing reunification services, and struggled to maintain employment and stable housing. Where a parent's "pattern of conduct shows no overall progress, the court might reasonably find that[,] under the circumstances, the problematic situation will not improve." Haney v. Adams Cnty. Office of Family & Children (In re A.H.), 832 N.E.2d 563, 570 (Ind. Ct. App. 2005). "[T]he historic inability to provide adequate housing, stability, and supervision, coupled with the current inability to provide the same, will support a finding" to terminate the parent-child relationship. Id. The trial court's conclusion that the conditions that resulted in Child's removal will not be remedied is not clearly erroneous.

Finally, Mother asserts that the trial court clearly erred when it concluded that termination of the parent-child relationship is in the best interests of Child. This argument must also fail. The trial court's conclusion is supported by the testimony of two family case managers and the court appointed special advocate. It is well established that such testimony "is sufficient to show by clear and convincing evidence that termination is in the child's best interests." Stewart v. Ind. Dep't of Child Servs. (In re J.S.), 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). Accordingly, we affirm the trial court's termination of Mother's parental rights over Child.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.

7