# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 14 2015, 8:44 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT Q.S.

Robert H. Bellinger, II
The Bellinger Law Office
Fort Wayne, Indiana

ATTORNEY FOR APPELLANT D.S.

Roberta L. Renbarger
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Miller
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

D.B.S. (Minor Child),

and

Q.S. (Father) and D.S. (Mother)

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

May 14, 2015

Court of Appeals Case No.
02A03-1410-JT-384

Appeal from the Allen Superior Court.
The Honorable Charles F. Pratt, Judge.
Cause No. 02D08-1311-JT-143

**Baker, Judge.**

[1] Q.S. (Father) and D.S. (Mother) appeal the juvenile court's order terminating the parent-child relationship between the parents and D.B.S. (Child). Mother argues that the juvenile court should have dismissed the termination petition because the termination hearing was held outside the 180-day timeframe required by statute. Mother and Father both argue that there is insufficient evidence supporting the termination order. Finding no error and sufficient evidence, we affirm.

## Facts

[2] Child was born to Mother and Father[1] on December 2, 2011. Mother has a lengthy history with the Department of Child Services (DCS). She has four children aside from Child; she consented to the adoption of her oldest and her parental rights have been terminated with respect to the other three.

[3] In 2012, Father was arrested for multiple criminal offenses and has been incarcerated since that time. He was eventually convicted of class B felony armed robbery and class B felony burglary and is serving a seven-year sentence. His earliest possible release date is in April 2017 and he has not seen Child since 2012.

---

[1] Paternity has never been established; consequently, Father is Child's alleged father.

[4]     On January 4, 2013, DCS received a report alleging that Mother was abusing illegal substances, that Child was ingesting them, that Child's medical needs were not being met, and that Mother did not have safe and suitable housing. On January 9, 2013, Mother was arrested. As a result of Mother's incarceration, DCS removed Child from Mother's care and custody and filed a petition alleging that Child was a Child in Need of Services (CHINS). Mother and Father admitted that Child was a CHINS on February 7 and February 20, 2013, respectively.

[5]     The juvenile court held a dispositional hearing with respect to Mother on February 7, 2013. Among other things, Mother was ordered to complete a substance abuse assessment and follow all recommendations; complete a psychological assessment and follow all recommendations; submit to random drug screens; refrain from illegal drug use and alcohol use; and attend all visits with Child. Father's dispositional hearing took place on February 20, 2013. As Father was incarcerated, he was ordered to enroll in parenting classes and complete a diagnostic assessment while incarcerated.

[6]     Mother did not complete a psychological evaluation. She completed a drug and alcohol assessment, but failed to complete the recommended substance abuse classes. She tested positive for alcohol in March 2014 and synthetic marijuana in May 2014. Mother attended only one visit with Child, and has not seen Child since February 2013.

[7] As a result of Mother's arrest in January 2013, she was convicted of receiving stolen property as both a class C felony and a class D felony. She was sentenced to two years of probation. During the CHINS case, Mother served thirty days in jail for a probation violation. At the time of the final day of the termination hearing, there was an open arrest warrant for Mother for another probation violation.

[8] During the course of the CHINS case, Mother lived at five different residences and spent thirty days in jail. At the time of the termination hearing, she was living with her boyfriend, who she characterized as "mentally different" and "slow." Tr. p. 75. Mother testified that if Child were returned to her custody, she would move in with her sister because she felt "more comfortable having my daughter around her than him." *Id.* at 74. Mother has not had stable employment throughout the duration of the case.

[9] Father has been incarcerated throughout the entirety of the CHINS and termination cases. Before his incarceration, he did not regularly visit with Child and did not provide for her financially. He has never established paternity.

[10] On January 3, 2014, DCS filed a petition to terminate the parent-child relationship between Mother, Father, and Child. The juvenile court held a factfinding hearing on June 10, June 18, and July 8, 2014. Mother failed to appear for the final two days of the hearing. On June 10, 2014, Father appeared telephonically but was unable to remain on the phone for the full

hearing. His attorney requested a continuance as a result. Mother's attorney assented and did not object to the continuance, and the juvenile court granted the request. On October 6, 2014, the juvenile court entered an order granting DCS's petitions to terminate the parent-child relationship between Mother, Father, and Child. Mother and Father now appeal.

# I.  Timeliness of Termination Hearing

[11]    First, Mother argues that the termination petition should have been dismissed because the termination hearing did not occur within 180 days of the filing of the petition. Indiana Code section 31-35-2-6 sets forth the requisite timeframe:

> (a)    Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter, the person filing the petition shall request the court to set the petition for a hearing. Whenever a hearing is requested under this chapter, the court shall:
>
> > (1)    commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter; and
> >
> > (2)    complete a hearing on the petition not more than one hundred eighty (180) days after a petition is filed under this chapter.
>
> (b)    If a hearing is not held within the time set forth in subsection (a), *upon filing a motion with the court by a party*, the court shall dismiss the petition to terminate the parent-child relationship without prejudice.

(Emphasis added).

[12]    In this case, Mother did not file a motion to dismiss with the juvenile court based upon a lack of compliance with the 180-day rule. There is no requirement, statutory or otherwise, for the juvenile court to dismiss the petition

sua sponte under these circumstances.  Consequently, we find no error on this basis.[2]

## II.  Termination Order

## A.  Standard of Review

[13]   Our standard of review with respect to termination of parental rights proceedings is well established.  In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013).  We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand.  *Id.*  Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous.  *Id.*  In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment.  *Id.* at 1229-30.  It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by

---

[2] Although the lack of filing a motion to dismiss is enough to dispose of this argument, we also note that Mother did not object to Father's request of a continuance on June 10, 2014.  Moreover, we note that Mother failed to appear at the initial hearing in the termination case on January 3, 2014, causing the initial hearing to be reset to February 5, 2014.  Mother's own actions, therefore, added to the length of time between the filing of the termination petition and the factfinding hearing.

the respondent parent's custody." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[14] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

[15] Mother and Father each argue that there is insufficient evidence establishing that there is a reasonable probability that the conditions that resulted in removal will not be remedied, that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being, and that termination is in Child's best interests.

## B.   Conditions that Resulted in Removal

[16] In determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for her child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). The court must also, however, evaluate a parent's habitual patterns of conduct—including criminal history, substance abuse, and lack of adequate housing and employment—to determine the probability of future neglect or deprivation of the child. *Id.*; *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

[17] In this case, the following conditions led to Child's removal and continued placement outside of the parents' home: Mother was incarcerated; Father was incarcerated; Mother had substance abuse issues; Mother was failing to meet Child's medical needs; and Mother had unstable housing.

[18] With respect to Mother, the following evidence was produced at the hearing:

- Mother completed a substance abuse assessment but only after four referrals for the service. She failed to complete the recommended substance abuse treatment. Tr. p. 24, 25, 158.
- Mother failed to complete the ordered psychological evaluation. *Id.* at 70, 158.
- Since Child's removal on January 9, 2013, Mother visited Child only once. *Id.* at 166-67.
- Mother lived at five different residences during the CHINS case. *Id.* at 87.
- Mother violated her probation once during the CHINS case and served thirty days in jail as a result. *Id.* at 82. At the time of the termination hearing, there was an open arrest warrant for Mother for another probation violation. *Id.* at 160.
- Child has special medical needs and Mother has never engaged in available services to learn how to meet those needs. *Id.* at 164, 167.

In other words, the evidence established that by the time of the termination hearing, Mother had failed to make progress on even one of the conditions that led to Child's placement outside of her care and custody. We also note that she failed to appear at the final two days of the factfinding hearing, further evidencing her unwillingness to do what needed to be done to parent her child. Therefore, we find that the evidence clearly and convincingly supports the juvenile court's conclusion that the conditions leading to Child's removal and placement outside of Mother's care and custody will not be remedied.

[19] As to Father, the record reveals that he has been incarcerated throughout the entirety of the CHINS and termination cases. Before his incarceration, he did not visit regularly with Child, did not support Child financially, and failed to establish paternity. His earliest possible release date is April 2017. In other words, nothing whatsoever has changed with respect to Father since Child was

removed from his care and custody. Consequently, we find that the evidence clearly and convincingly supports the juvenile court's conclusion that the conditions leading to Child's removal and placement outside of Father's care and custody will not be remedied.[3]

## C. Best Interests

[20] Finally, Mother and Father contend that there is insufficient evidence supporting a conclusion that termination of the parent-child relationship is in Child's best interests. In determining what is in the best interests of a child, the juvenile court is required to consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). In doing so, the court must subordinate the interests of the parents to those of the child involved. *Id.*

[21] In this case, at the time of the termination hearing, Child had been removed from parents' care and custody for one and one-half years. Child had not seen Father in over two years and had not seen Mother in over one year. During the entire period of removal, Child lived in the same preadoptive foster home. She was thriving in that home and was receiving the medical care she needed.

---

[3] The parents also argue that the evidence does not support a conclusion that there was a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being. We note, however, that the statute is phrased in the disjunctive. I.C. § 31-35-2-4. Inasmuch as we have already found that the evidence supports a conclusion that the conditions resulting in removal will not be remedied, we need not also consider this argument. We note, however, that the same evidence supporting our conclusion in that regard likewise supports a conclusion that there was a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being.

[22] Father's earliest possible release date will be over four years since the date of removal, and over five years since he last interacted with Child. While Mother had every opportunity to engage in services to better her situation, she failed to do so. At the time of the termination hearing, Mother did not have stable housing, had not completed substance abuse or mental health treatment, and had a warrant out for her arrest. And perhaps most fundamentally, Mother visited with Child *only once* after Child was removed. The family case manager and guardian ad litem both testified that they believe termination is in Child's best interests. Tr. p. 122-28, 164-65. This record amply supports the juvenile court's conclusion that termination of the parent-child relationship is in Child's best interests. Consequently, we find sufficient evidence supporting the order terminating the parent-child relationship between Mother, Father, and Child.

[23] The judgment of the juvenile court is affirmed.

Najam, J., and Friedlander, J., concur.