## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 07 2017, 8:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Roberta Renbarger
Renbarger Law Firm
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of M.L.A.C. (Child) and M.A.C. (Child) and L.C. (Mother);

L.C. (Mother),

*Appellant-Defendant,*

v.

Indiana Department of Child Services,

*Appellee-Plaintiff*

December 7, 2017

Court of Appeals Case No.
02A05-1706-JT-01500

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause Nos.
02D08-1607-JT-173
02D08-1607-JT-174

**May, Judge.**

[1] L.C. ("Mother") appeals the involuntary termination of her parental rights to M.L.A.C. and M.A.C. (collectively, "Children"). Mother argues the trial court's findings do not support its conclusions that the conditions under which Children were removed from her care would not be remedied and that termination was in Children's best interests.[1] We affirm.

## Facts and Procedural History

[2] Mother[2] gave birth to M.L.A.C. and M.A.C. on January 28, 2012, and January 3, 2014, respectively. On September 26, 2014, Children were removed from Mother's care because of domestic violence, Mother's drug use, and Mother's choice to allow Children's maternal grandmother to babysit Children despite maternal grandmother's drug use. The Department of Child Services ("DCS") filed petitions to adjudicate each of Children as a Child in Need of Services ("CHINS") the same day and filed amended petitions on October 20, 2014. The trial court held an initial hearing on the matter on October 22, 2014.

[3] On January 27, 2015, Mother admitted Children were CHINS and the trial court adjudicated them as CHINS. The trial court also held a dispositional

---

[1] Mother also asserts the evidence was insufficient to support the court's conclusion that the continuation of the parent-child relationships posed a threat to the children's well-being. We need not, however, address that argument. *See infra* n.4.

[2] M.L.A.C.'s father is C.L., and he does not participate in this appeal. M.A.C.'s father is unknown.

hearing and issued a parent participation plan for Mother. As a part of that plan, the trial court ordered Mother to, among other things: refrain from criminal activity; maintain clean, safe, and sustainable housing at all times; notify DCS of any changes in contact information within forty-eight hours of the changes; cooperate with caseworkers and the Guardian ad litem ("GAL"); enroll in home-based services; obtain a psychological evaluation and follow the recommendations; enroll in non-violence counseling; refrain from using illegal substances and alcohol; and submit to random drug screens.

[4] On March 26, 2015, the trial court held a review hearing and found Mother was "demonstrating an ability to benefit from services" and placed Children back in Mother's care. (App. Vol. II at 17.) In late June 2015, Mother called the family who had fostered M.L.A.C. as part of an earlier CHINS case and asked them to take care of Children while Mother went out of state. Mother did not return to retrieve Children, and DCS officially removed Children from Mother's care in early July 2015, and Children have been with the foster family since that time.

[5] On September 17, 2015, the trial court held a permanency hearing and received evidence Mother had not participated in services or non-violence counseling, maintained suitable housing, or visited with Children since they were removed from her care in July 2015. In addition, Mother tested positive for illegal substances. The trial court changed the permanency plan for Children to termination of parental rights and ordered Mother's visits with Children to be supervised.

The trial court held review hearings on March 9, 2016, and August 31, 2016, and reaffirmed the permanency plan of termination on August 31, 2016. DCS filed a petition to terminate Mother's parental rights to Children on September 15, 2016. The trial court held an evidentiary hearing on the matter on February 13, 2017. Mother appeared telephonically because she was incarcerated in the Adams County Jail. The trial court continued the hearing to March 6, 2017, so Mother could be present, and she was physically present to testify on March 6. On May 30, 2017, the trial court issued orders terminating Mother's parental rights to Children.

# Discussion and Decision

We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must

subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[9]     To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g*

*denied*.  If the court finds the allegations in the petition are true, it must terminate the parent-child relationship.  Ind. Code § 31-35-2-8.

[10]  When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review.  *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).  We determine whether the evidence supports the findings and whether the findings support the judgment.  *Id.*  "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference."  *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996).  If the evidence and inferences support the juvenile court's decision, we must affirm.  *In re L.S.*, 717 N.E.2d at 208.

[11]  Mother challenges the court's conclusions the conditions under which Children were removed would not be remedied, the continuation of the parent-child relationship posed a risk to Children, and termination was in the best interests of Children.  Mother does not challenge any specific findings of fact, and therefore we accept the trial court's findings as true.  *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").  Thus, we move to the second part of the analysis - whether the findings support the trial court's judgment.

### *Reasonable Probability Conditions Would Not Be Remedied*

[12]  A trial court must judge a parent's fitness to care for a child at the time of the termination hearing.  *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).

Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke Cnty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[13] When assessing a parent's fitness to care for a child, the trial court should view the parent as of the time of the termination hearing and take into account the changes that have occurred during the proceedings. *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. However, the trial court must also "evaluat[e] the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of [a] child." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.

[14] Here, regarding whether the conditions under which Children were removed from Mother's care would be remedied, the trial court found:

> 10. A Permanency Hearing was held on September 17, 2015, and a Permanency Plan for the termination of parental rights was adopted by the court. In support thereof the Court found that the mother had not visited the children, had tested positive for illegal drugs, and had not maintained safe housing.
>
> * * * * *
>
> 13. The Mother's parental rights to another child were involuntarily terminated on or about January 14, 2011.

14. At the time of the final Factfinding hearing the mother was incarcerated in the Adams County, Indiana Jail where she had been since December 21, 2016. She is charged with intimidation.

15. From the testimony of Art Hastings, an employee with Park Center, Inc. the Court finds that he completed an intake session with the Mother in December, 2015. Based on the intake assessment the mother was referred for supervised visitations. He found the mother to be argumentative and at the second visit she was asked to leave. Due to lack of subsequent contact the referral was closed in the fall of 2016.

16. The mother was referred by the Department for counseling for domestic violence to Crime Victims Care. Owing to an inability to contact the mother, the referral was closed.

17. From the testimony of Department case worker Beverly Marcus, the Court finds that the mother did not successfully complete home based services. Except for two occasions, the mother has not visited her children since July 2015.

(App. Vol. II at 17) (formatting in original). Based on those findings, the trial court concluded:

By the clear and convincing evidence the court determines that there is reasonable probability that reasons that brought about the children's placements outside the home will not be remedied. . . . The mother has not completed anger management counseling and has not maintained regular contact with the Department. For the past several months she has not visited her children.

(*Id*. at 18.)

[15]     Mother argues she

> [i]s not a perfect person and not a perfect mother. She
> participated in many services and secured the return of her
> children from March 19, 2015, to July, 2015. When [Mother]
> lost her housing she turned to her support system, the foster
> parents for her children. She returned the children to the foster
> parents, rather than leaving the area with her children. She made
> the correct decision for the safety of her children.

(Br. of Appellant at 19.) She also notes that, while she had not completed non-violence counseling, "she had participated regularly after the children were removed and until their return to her on March 19, 2015." (*Id.*) Based thereon, Mother asserts the reasons Children were removed from her care have been resolved. Her arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses). The trial court's findings support its conclusion that the conditions under which Children were removed from Mother's care would not be remedied.[3] *See, e.g., In re E.M.*, 4 N.E.3d 636, 644 (Ind. 2014) (findings regarding Father's continued non-

---

[3] The trial court found the conditions under which Children were removed would not be remedied and the continuation of the parent-child relationship posed a threat to Children. DCS does not have to prove both because the statute is written in the disjunctive, such that DCS must prove either by clear and convincing evidence. *See* Ind. Code § 31-35-2-4(b)(2)(B). Because the findings support the conclusion there was a reasonable probability conditions leading to Children's removal would not be remedied, we need not address whether the findings also support a conclusion that the continuation of the parent-child relationship posed a threat to Children's well-being. *See In re L.S.* 717 N.E.2d 204, 209 (Ind. Ct. App. 1999), *reh'd denied, trans. denied, cert. denied* 534 U.S. 1161 (2002) (because section 31-35-2-4 (6)(2)(B) is written in the disjunctive, court needs to find only one requirement to terminate parental rights).

compliance with services supported trial court's conclusion the conditions under which children were removed from parents' care would not be remedied).

### *Best Interests of Children*

[16]     In determining what is in children's best interests, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the children's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[17]     Regarding the best interests of Children, the trial court found:

> 18. . . . The current foster mother has expressed her interest in adopting the children.

> 19. The child's [sic] Guardian ad Litem has also concluded that the children's best interests are served by the termination of parental rights. In support of his conclusion he cites the parents' lack of compliance with services. The mother, he believes [sic] is in need of anger management counseling and is unstable and poses a threat to the children. The mother is without adequate housing for the children.

(App. Vol. II at 18.)  Based on those findings, the trial court concluded:

> In this case the Guardian ad Litem has concluded that termination of parental rights is in the children's best interests. The children need a safe [sic] stable and nurturing home environment.  The foster mother with whom the children are now bonded has advised of her intent to adopt should parental rights be terminated.  The Court concludes the best interests of the children are served by terminating parental rights.

(*Id.*)

[18]    Mother makes no specific argument why termination is not in the best interests of Children; she just asserts termination is not in Children's best interests.  To the extent she makes an argument, she is asking us to reweigh the evidence, which we cannot do.  *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence or judge the credibility of witnesses).  We therefore conclude the trial court's findings support its conclusion that termination was in Children's best interests.  *See, e.g., In re A.I.*, 825 N.E.2d 798, 811 (Ind. Ct. App. 2005) (trial court's findings based on testimony of service providers coupled with evidence that conditions resulting in placement outside the home would not be remedied supported trial court's conclusion termination was in child's best interest), *trans. denied*.

# Conclusion

The trial court's findings supported its conclusions the conditions under which Children were removed from Mother's care would not be remedied and termination was in Children's best interests. Accordingly, we affirm.

Affirmed.

Vaidik, C J., and Altice, J., concur.